KAREN P. HEWITT
United States Attorney
JOSEPH S. SMITH, JR.
Assistant United States Attorney
California State Bar No. 200108
MICHAEL F. KAPLAN
Assistant United States Attorney
California State Bar No. 185759
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5669/5101
(619) 557-3445 (Fax)
Email: joseph.s.smith@usdoj.gov
       michael.kaplan@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0090-LAB |
|---|---|---|
| Plaintiff, | ) | DATE:        February 19, 2008 |
|  | ) | TIME:         2:00 p.m. |
| v. | ) |  |
|  | ) | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| JUAN MEZA-PADILLA, | ) |  |
| Defendant. | ) | (1)   DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; |
|  | ) | (2)   SUPPRESS STATEMENTS; |
|  | ) | (3)   PRESERVE AND INSPECT EVIDENCE; |
|  | ) | (4)   COMPEL DISCOVERY; AND |
|  | ) | (5)   GRANT LEAVE TO FILE FURTHER MOTIONS. |
|  | ) |  |
|  | ) | TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |
|  | ) |  |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and JOSEPH S. SMITH, JR., Assistant United States Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions

1

1  together with Statement of Facts and Memorandum of Points and Authorities.  This Response and

2  Opposition is based upon the files and records of the case.

3  <center>**I**</center>

4  <center>**STATEMENT OF THE CASE**</center>

5          On January 9, 2008, a federal grand jury for the Southern District of California returned a

6  two-count Indictment, charging Defendant with (1) one count of importation of heroin, in violation of

7  21 U.S.C. §§ 952 and 960; and (2) one count of possession of heroin with intent to distribute, in

8  violation of 21 U.S.C. § 841(a)(1).  Defendant was arraigned on the Indictment on January 10, 2008,

9  and entered not guilty pleas.

10  <center>**II**</center>

11  <center>**STATEMENT OF FACTS**</center>

12  **A.    IMMIGRATION HISTORY**

13  Defendant is a United States citizen.

14  **B.    INSTANT OFFENSE**

15          On December 19, 2007, at approximately 5:30 p.m., Juan Meza-Padilla, ("Defendant") entered

16  the United States from Mexico at the San Ysidro, California, Port of Entry.  Defendant was the driver

17  and sole occupant of a Dodge Ram truck bearing California license plate #5H43744.  Customs and

18  Border Protection (CBP) Officer Jeffrey Cranford made contact with Defendant while conducting pre-

19  primary inspection at the Port of Entry.  Officer Cranford spoke with Defendant and asked him whether

20  he was bringing in anything from Mexico.  Defendant stated that he had nothing from Mexico.  Officer

21  Cranford then asked him whose truck he was driving.  Defendant responded that it belonged to his wife.

22  Officer Cranford then asked Defendant for what purpose he traveled to Mexico and Defendant stated

23  that he went to Mexico to see a dentist.  Officer Cranford noticed that Defendant showed signs of

24  nervousness, including trembling hands, little eye contact, and carotid artery visibly pumping.

25          Officer Cranford then inspected the vehicle.  During the inspection, Officer Cranford opened the

26  hood of the vehicle and inspected the engine compartment.  He noticed that the mounting bolts for the

27  intake manifold were shiny, indicating that some recent work may have been performed on it.  He pulled

28  the vacuum hose off of the manifold and probed the inside of the manifold.  As he probed the manifold

<center>2</center>

he could feel a non-factory metal plate just inside the interior manifold wall.  He then closed the hood and asked Defendant where he was going with the truck.  Defendant responded that he was going home to San Diego.  Officer Cranford then escorted the vehicle to the secondary lot for further inspection.

Once in the secondary inspection area, Officer Cranford conducted a more thorough inspection, where he removed the plastic air intake housing and looked in the manifold, discovering a non-factory metal box inside.  At that point, Defendant was escorted into the security office and patted down for security-related concerns. Canine Enforcement Officer (CEO) Elichiro Ninomiya then had his narcotics detector dog "Cora" screen the vehicle. Cora alerted to the odor of narcotics emanating from underneath the engine compartment.

CBP Officer Jose Garibay, after having been informed of the inspections that both Officer Cranford and Ninomiya had conducted, contacted a contractor, American Towing, to have the manifold removed from the vehicle.  The mechanic arrived and removed the air intake manifold, exposing a non-factory metal compartment.  This compartment was removed from the vehicle and placed on a table.  At this time screws were removed from the bottom of the compartment , which revealed three packages of a substance that field tested positive for heroin.  The total weight of the packages was approximately 10.70 kilograms.

### C.    DEFENDANT'S STATEMENT

At approximately 6:37 p.m. Immigration and Customs Enforcement Agents Mike Brown and Nathan Emery escorted Defendant from the security office sitting area to a security office holding cell. Once at the holding cell, Special Agent Brown advised Defendant that drugs had been found in his car, and proceeded to orally advise Defendant of his Miranda rights in the English language.  During the advisement, Defendant claimed that he did not understand. According to Defendant, although he had been speaking English for 11 years, he did not understand every word spoken to him.  To ensure that Defendant understood his rights, San Diego Police Officer Martha Gasca, a fluent Spanish speaker, was asked to assist in the interview.

With Officer Gasca's assistance, Defendant was advised of his rights in the Spanish language. Defendant acknowledged his rights and waived them, agreeing to speak to law enforcement officers. Defendant then stated that he knew that the vehicle he was driving contained drugs, but claimed that he

did not know what type of drugs, nor did he know specifically where the drugs were hidden in the vehicle. He stated that he had been paid $900 to transport the drugs into the United States and that he was supposed to receive a call on a cellular telephone instructing him as to where to deliver the drugs in San Diego. Of note, at the time of his arrest, Defendant was in possession of $1,139.00 in United States currency and was carrying three cellular telephones. Defendant stated that he was told to say, if he was asked, that the truck belonged to his wife. He said that "something" Lopez was the lady on the vehicle's registration, but that she was not his wife. He stated that December 19th was the first time he had seen or driven the Dodge truck. The interview was completed at approximately 6:51 p.m.

At approximately 8:40 p.m., Special Agent Brown escorted Defendant to an interview room at the Port of Entry in order to continue the interview with Defendant and to complete routine booking information. Once again, SDPD Officer Gasca assisted in the interview. The rights advisement and subsequent statement made by Defendant were recorded on a DVD. Defendant was once again advised of his Miranda rights in the Spanish language and again waived those rights, signing a written acknowledgment. After Defendant waived his rights for the second time, Special Agent Brown and Officer Gasca continued their earlier questioning of Defendant with Special Agent Brown informing Defendant that the specific type of drug found in his vehicle was heroin. At this point, Defendant changed his earlier story, now claiming that he was never informed of the fact that drugs would be in the vehicle. Defendant stated that he had originally gone down to Mexico from his home in Wildomar, California, at about 8:00 p.m. on Monday, December 17, 2007, in his own truck. He said that he had gone down to take toys to a toy store that he owned there and that he stayed the night at the Kino Hotel while in Mexico. According to Defendant's new story, he spent the next day working at his store. He said that he returned to the Kino Hotel at approximately 8:00 p.m. on Tuesday the 18th and then left at approximately 4:00 a.m. on Wednesday to return home to Wildomar. Defendant stated that he was experiencing tooth pain at home and decided to return back down to Mexico that day (Wednesday) to see a dentist, despite the fact he did not have an appointment. He claimed that he took a shuttle bus from his home to the border rather than driving his own vehicle. Initially, he said that he took a shuttle bus because he did not need to run errands while he was in Mexico. Later in the interview, however, he stated that he took the bus because he was experiencing severe tooth pain. He said that he arrived at

1   the dentist's office around 10:30 a.m. on Wednesday and that he spent about two hours at the dentist's

2   office.  He stated that the dentist put a filling in his tooth.  When asked, Defendant could not give the

3   name of the dentist, nor did he have paperwork documenting his visit.

4          Defendant stated that after he left the dentist's office in Tijuana, he met two Mexican men at a

5   bar called Chalavelas at approximately 11:30 a.m.  He stated that the two men asked if he had a passport

6   and if he wanted to make some money by delivering a car to someone in the United States who couldn't

7   come to pick up the car.  While Defendant gave a general physical description of both men, he stated

8   that he did not know their names and that they had not told him their names.  Near the end of the

9   interview, Special Agent Brown placed a call to Defendant's residence in an effort to speak to his

10  brother-in-law, who Defendant stated lived with Defendant and Defendant's wife and children.  As the

11  call was being placed, Defendant stated that he would rather speak with an attorney.[1/]  The Government

12  is not going to attempt to illicit any statements made by Defendant after this point in its case-in-chief.

13          **D.   CRIMINAL HISTORY**

14          A check of Defendant's criminal record revealed that he was convicted on approximately

15  September 20, 2004, in Riverside County, California, for a violation of California Penal Code §273.5,

16  inflicting corporal injury on spouse (felony), and received a six-month jail sentence followed by forty-

17  eight months of probation.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25

26          [1/]     Earlier in the interview Defendant was asked whether he would consent to a search of
    his home.  Initially, Defendant stated that he had no objection to a search and that he would consent.
27  Then, as the agent began to advise Defendant regarding a written consent to search form, Defendant
    stated that he had changed his mind and would not consent to a search without speaking with an attorney
28  about it.  Defendant did not state in any way that he wanted to terminate the interview nor speak to an
    attorney regarding the interview, only regarding the requested consent to search.

1   //

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# III

## DEFENDANT'S MOTIONS

### A.  THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

Defendant, although recognizing that the Ninth Circuit rejected the same argument in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) asks that this Court find that the instructions provided to the grand jurors are constitutionally impermissible.  Although Defendant disagrees with the holding of Navarro-Vargas, he cannot escape that fact that it is controlling in this case.  The Government requests the Court deny Defendant's motion given the fact that the Ninth Circuit has previously considered, and rejected, this same argument.

Further, to the extent Defendant wishes to supplement his present motion at a later date, the Government incorporates by reference its response and opposition regarding the exact issue in United States v. Covarrubias, 07CR0491-BTM, and United States v. Jimenez-Bermudez, 07CR1372-JAH, and asks this Court to take judicial notice of the rulings in these cases.

### B.  DEFENDANT'S SUPPRESSION MOTION SHOULD BE DENIED

#### 1.  Defendant Has Failed to Provide a Sworn Declaration

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion.  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer.  In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements).  Specifically, Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."  Here, Defendant has failed to support his allegations with a declaration, in clear opposition to Local Rule 47.1(g).  The Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence

7

1   because the defendant did not properly submit a declaration pursuant to a local rule.  United States v.

2   Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

3          Defendant moves to suppress the statements made by him to agents.  Next, Defendant requests

4   an evidentiary hearing to establish the facts and to aid the Court in deciding his suppression motion;

5   however, he does not support his request with a declaration.  Nonetheless, if the Court chooses to hold

6   an evidentiary hearing on Defendant's motion at a future date, the United States would welcome the

7   opportunity to prove that Defendant's statements were voluntary and are, therefore, admissible.

8                  **2.     Defendant's Statements Were Voluntary**

9          Defendant moves to suppress his post-Miranda statements and requests that the United States

10  prove that all statements were voluntarily made after a knowing and intelligent Miranda waiver.

11  Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether

12  Defendant's statements were voluntary.  Defendant did not file a declaration or present any other

13  evidence in support of his motion.  Defendant's motion to suppress statements should be denied without

14  an evidentiary hearing. The Ninth Circuit has noted that even if a defendant provides factual allegations,

15  the court may still deny an evidentiary hearing if the grounds for suppression consist solely of

16  conclusory allegations of illegality.  See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993)

17  (District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an

18  evidentiary hearing where the appellant's declaration and points and authorities submitted in support

19  of motion to suppress indicated no contested issues of fact).  Defendant had an opportunity, in his

20  moving papers, to proffer any facts alleging violations of his rights, but failed to do so.  Instead,

21  Defendant merely cited generic Miranda law. The mere incantation of boilerplate language fails to

22  generate a disputed factual issue requiring an evidentiary hearing.  See United States v. Howell, 231

23  F.3d 615, 623 (9th Cir. 2000).

24         A waiver under Miranda v. Arizona, 384 U.S. 436 (1966), must be voluntary, knowing, and

25  intelligent.  Colorado v. Connelly, 479 U.S. 157, 169-70 (1986).  The United States bears the burden

26  of showing by a preponderance of the evidence that a defendant waived his Miranda rights.  Johnson

27  v. Zerbst, 304 U.S. 458, 464 (1938); Terrovona v. Kincheloe, 912 F.2d 1176, 1180 (9th Cir. 1990).

28

8

1        In order to establish a valid waiver, the United States must show two things: (1) the

2    relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate

3    choice rather than intimidation, coercion, or deception; and (2) the waiver was made with a full

4    awareness both of the nature of the right being abandoned and the consequences of the decision to

5    abandon it.  If the totality of the circumstances surrounding the interrogation reveal both an uncoerced

6    choice and the requisite level of comprehension, a valid waiver has occurred.  Colorado v. Spring, 479

7    U.S. 564, 573 (1987); United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994); United States v.

8    Bautista-Avila, 6 F.3d 1360, 1364-66 (9th Cir. 1993); Derrick v. Peterson, 924 F.2d 813, 820-21 (9th Cir.

9    1990).

10        The agents who questioned Defendant specifically covered his rights.  Officer Gasca read

11    Defendant his rights in Spanish before the initial interview in the holding cell.  The Defendant

12    acknowledged his rights and waived them.  Later, before the second interview, Officer Gasca once again

13    advised Defendant of his rights.  The second rights advisement was recorded on DVD and provided to

14    Defense Counsel in discovery.  It was also executed on a written form which was also provided in

15    discovery.  During the course of the interview, the Defendant never invoked his right to an attorney until

16    the very end of the interview, as a call was being placed to his home to confirm or refute his story.  The

17    Government does not intend to introduce any statements made by Defendant after this point on the

18    DVD; however, the Government may offer such statements as permissible impeachment, should the

19    Defendant choose to testify at trial.

20        The Ninth Circuit  has found a waiver to be knowing and intelligent when a defendant has said,

21    in response to questions by the police, that he or she understands his or her rights, and that the defendant

22    is willing to talk.  See, e.g., United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993);

23    United States v. Gordon, 974 F.2d 1110, 1116 (9th Cir. 1992).  In the present case Defendant expressed

24    his willingness to answer questions and signed a written waiver which is compelling evidence of a valid

25    waiver.  See e.g., United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1997) ("[A] written waiver

26    of one's Miranda rights is strong evidence that the waiver is valid.").

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As such, the proper test is whether the totality of circumstances reflect that Defendant's statement was the product of a rational intellect and a free will.  See Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In this instance it clearly was.

## C.    PRESERVE AND INSPECT EVIDENCE

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

Regarding preservation of the drugs and packaging seized from Defendant on the date of his arrest, the Government opposes a any request for a blanket order requiring the Government to preserve the contraband for an indefinite period of time.  Agency regulations call for the destruction of contraband drugs. Further, given the extremely large volume of drugs seized by Immigrations and Customs Enforcement, requiring the long-term preservation of bulk drugs would pose a severe burden. Should Defendant or his counsel wish to inspect, re-weigh, or otherwise examine the drugs, the Government asks that the Court order the preservation of the drugs only until such time as the requested action can reasonably be taken by the defense.

The United States opposes Defendant's motion to preserve "any videotapes capturing Mr. Meza-Padilla in this matter."  Defendant's motion was not filed until February 5, 2008.  This is more than a month after Defendant's arrest at the San Ysidro, Port of Entry.  If any videotapes of the port of entry existed from the Port of Entry, that captured Defendant, they have likely been recorded over.

## D.    THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure.  The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

### (1)    The Defendants' Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements.  The Government has produced all of Defendant's written statements that are known to the undersigned Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes.

1   If the Government discovers additional oral or written statements that require disclosure under Rule

2   16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

3           The Government has no objection to the preservation of the handwritten notes taken by any of

4   the Government's agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976)

5   (agents must preserve their original notes of interviews of an accused or prospective government

6   witnesses).  However, the Government objects to providing Defendant with a copy of any rough notes

7   at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

8   notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582,

9   590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not

10  require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and

11  a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because

12  the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise

13  both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted

14  by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this

15  case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez,

16  954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where

17  notes were scattered and all the information contained in the notes was available in other forms).  The

18  notes are not Brady material because the notes do not present any material exculpatory information, or

19  any evidence favorable to Defendant that is material to guilt or punishment.  Brown, 303 F.3d at 595-96

20  (rough notes were not Brady material because the notes were neither favorable to the defense nor

21  material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994)

22  (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a

23  future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or

24  Brady, the notes in question will be provided to Defendant.

25              **(2)      Arrest Reports, Notes and Dispatch Tapes**

26          The United States has provided Defendant with arrest reports.  As noted previously, agent rough

27  notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

28

1          (3)    **Brady Material**

2          Again, the United States is well aware of and will continue to perform its duty under <u>Brady v.</u>

3    <u>Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory

4    evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however,

5    is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,

6    or which pertains to the credibility of the United States' case.  As stated in <u>United States v. Gardner</u>, 611

7    F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to

8    disclose every bit of information that might affect the jury's decision; it need only disclose information

9    favorable to the defense that meets the appropriate standard of materiality."  <u>Id.</u> at 774-775 (citation

10   omitted).

11         The United States will turn over evidence within its possession which could be used to properly

12   impeach a witness who has been called to testify.

13         Although the United States will provide conviction records, if any, which could be used to

14   impeach a witness, the United States is under no obligation to turn over the criminal records of all

15   witnesses.  <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

16   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

17   chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d

18   1305, 1309 (9th Cir. 1979).

19         Finally, the United States will continue to comply with its obligations pursuant to

20   <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

21         (4)    **Sentencing Information**

22         Defendant claims that the United States must disclose any information affecting Defendant's

23   sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83

24   (1963).  The United States respectfully contends that it has no such disclosure obligation under <u>Brady</u>.

25         The United States is not obligated under <u>Brady</u> to furnish a defendant with information which

26   he already knows.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  <u>Brady</u> is a rule of

27   disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the

28

1    defendant.  In such case, the United States has not suppressed the evidence and consequently has no

2    <u>Brady</u> obligation.  <u>See</u> <u>United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

3        But even assuming Defendant does not already possess the information about factors which

4    might affect their guideline range, the United States would not be required to provide information

5    bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and

6    prior to their respective sentencing dates.  <u>See</u> <u>United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th

7    Cir. 1988) ("No [<u>Brady</u>] violation occurs if the evidence is disclosed to the defendant at a time when

8    the disclosure remains in value.").  Accordingly, Defendant's demand for this information is premature.

9                    **(5)    <u>Defendant's Prior Record.</u>**

10       The United States has already provided Defendant with a copy of his criminal record in

11   accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

12                 **(6)    <u>Proposed 404(b) Evidence and 609 Evidence</u>**

13       Should the United States seek to introduce any similar act evidence pursuant to Federal Rules

14   of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of

15   such evidence and information about such bad act at the time the United States' trial memorandum is

16   filed.

17       At this time, the United States intends, under Fed. R. Evid. 609, to use Defendant's 2004 felony

18   conviction for spouse abuse as impeachment evidence should Defendant elect to testify at trial.

19                        **(7)    <u>Evidence Seized</u>**

20       The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing

21   Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence

22   which is within the possession, custody or control of the United States, and which is material to the

23   preparation of Defendant's defense or are intended for use by the United States as evidence in chief at

24   trial, or were obtained from or belong to Defendant, including photographs.

25       The United States, however, need not produce rebuttal evidence in advance of trial.  <u>United</u>

26   <u>States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), <u>cert. denied</u>, 474 U.S. 953 (1985).

27

28

**(8)**     <u>Preservation of Evidence</u>

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

Again, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

**(9)**     <u>Tangible Objects</u>

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**(10)**     <u>Evidence of Bias or Motive to Lie</u>

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(11)**     <u>Impeachment Evidence</u>

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

1        **(12)     Criminal Investigation of Government Witness**

2        Defendant is not entitled to any evidence that a prospective witness is under criminal

3   investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

4   witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United

5   States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

6   witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586

7   F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

8   discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

9   of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

10       The Government will, however, provide the conviction record, if any, which could be used to

11  impeach witnesses the Government intends to call in its case-in-chief.   When disclosing such

12  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

13  chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

14  1305, 1309 (9th Cir. 1979).

15       **(13)     Evidence Affecting Perception, Recollection, or Truth-Telling**

16       The United States is unaware of any evidence indicating that a prospective witness has a problem

17  with perception, recollection, communication, or truth-telling.

18       **(14)     Witnesses Favorable to the Defendant**

19       As stated earlier, the Government will continue to comply with its obligations under Brady and

20  its progeny.  The Government is not aware of any witnesses who have made an "arguably favorable

21  statement concerning the defendant or who could not identify him or who w[ere] unsure of his identity,

22  or participation in the crime charged."  [Def. Mtn. at 8.]

23       **(15)     Statements Relevant to the Defense**

24       To reiterate, the United States will comply with all of its discovery obligations.  However, "the

25  prosecution does not have a constitutional duty to disclose every bit of information that might affect the

26  jury's decision; it need only disclose information favorable to the defense that meets the appropriate

27  standard of materiality."  Gardner, 611 F.2d at 774-775 (citation omitted).  Further, Defendant is not

28  entitled to the Grand Jury transcripts.

16

1          **(16)    Jencks Act Material**

2          The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on

3    direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks

4    Act) in the Government's possession that was made by the witness relating to the subject matter to

5    which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written

6    statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially

7    verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement

8    by the witness before a grand jury. 18 U.S.C. § 3500(e).   If notes are read back to a witness to see

9    whether or not the government agent correctly understood what the witness was saying, that act

10   constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d

11   1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).   While the

12   Government is only required to produce all Jencks Act material after the witness testifies, the

13   Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any

14   needless delays.

15         **(17)    Giglio Information**

16         As stated previously, the United States will comply with its obligations pursuant to Brady v.

17   Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991),

18   and Giglio v. United States, 405 U.S. 150 (1972).

19         **(18)    Agreements Between the Government and Witnesses**

20         The Government has not made or attempted to make any agreements with prospective

21   Government witnesses for any type of compensation for their cooperation or testimony.

22         **(19)    Informants and Cooperating Witnesses**

23         The Government must generally disclose the identity of informants where (1) the informant is

24   a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States,

25   353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some

26   circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the

27   informant's identity is required under Roviaro.   See United States v. Ramirez-Rangel, 103 F.3d 1501,

28   1508 (9th Cir. 1997). If the Government determines that there is a confidential informant who is a

1  material witness in this case, the Government will either disclose the identity of the informant or submit

2  the informant's identity to the Court for an in-chambers inspection.

3  **(20)    Bias by Informants or Cooperating Witnesses**

4  As stated above, the United States is unaware of any evidence indicating that a prospective

5  witness is biased or prejudiced against Defendant.  The United States is also unaware of any evidence

6  that prospective witnesses have a motive to falsify or distort testimony.

7  **(21)    Henthorn Requests**

8  The Government will comply with the requirements of United States v. Henthorn, 931 F2d 29

9  (9th Cir. 1991).

10  **(22)    Expert Summaries**

11  The Government will comply with Rule 16(a)(1)(G) and provide Defendants with a written

12  summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of

13  the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert

14  witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

15  It is expected that the Government will call expert witnesses in the fields of drug value and drug

16  analysis.   It is anticipated that the drug analysis expert will identify the substance seized from

17  Defendant's vehicle as heroin.  Further, it is anticipated that the drug value expert will opine that the

18  drugs found in Defendant's vehicle were very valuable and intended for distribution.

19  **(23)    Residual Request**

20  The Government has already complied with Defendant's request for prompt compliance with

21  its discovery obligations. The Government will comply with all of its discovery obligations, but objects

22  to the broad and unspecified nature of Defendant's residual discovery request.

23  **F.    LEAVE TO FILE FURTHER MOTIONS**

24  The United States does not oppose Defendant's request to file further motions if they are based

25  on new discovery or other information not available to Defendant at the time of this motion hearing.

26

27

28

18

IV.

<u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED:  February 12, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


/s/ JOSEPH S. SMITH, JR.
JOSEPH S. SMITH, JR.
Assistant United States Attorney
Email: joseph.s.smith@usdoj.gov

/s/ MICHAEL F. KAPLAN
MICHAEL F. KAPLAN
Assistant United States Attorney
Email: michael.kaplan@usdoj.gov

19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0090-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| JUAN MEZA-PADILLA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Michael F. Kaplan, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **Government's Response and Opposition to Defendant's Motions to: (1) Dismiss Indictment Due to Improper Grand Jury Instruction; (2) Suppress Statements; (3) Preserve and Inspect Evidence; (4) Compel Discovery; and (5) Grant Leave to File Further Motions ,Together with Statement of Facts and Memorandum of Points and Authorities** on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Michelle Betancourt, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 12, 2008.

/s/ Michael F. Kaplan
MICHAEL F. KAPLAN