# EXHIBIT A

**UNITED STATES DISTRICT COURT**       )     AUSA Bond Approval: _C E M_
**UNITED STATES OF AMERICA**           )
                                       )     **APPEARANCE BOND** _08CR90 LAB_
          vs.                          )     **FOR CASE NUMBER** _07MJ2946-_
                                       )
_JUAN MEZA-PADILLA_                     )

         I, the undersigned defendant, and we, the sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally are bound to pay the United States of America the sum of $ _100,000_ , and there has been deposited in the Registry of the Court the sum of $_____ _0_ _____ in cash or the amount of the bond is secured by _a deed of trust_ . (describe other security)
         The conditions of this bond are that the defendant is to appear as ordered by the United States District Court for the Southern District of California at San Diego, and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above-entitled matter as may be given or issued by a Federal Judge or by the United States District Court to which the defendant may be removed or the cause transferred; that the defendant is not to depart the State of California, or the jurisdiction of any other United States District Court to which the defendant may be removed or the cause transferred after he has appeared in such other district pursuant to the terms of this bond, except in accordance with such orders or warrants as may be issued by a Federal Judge or the United States District Court for the Southern District of California or the United States District Court for such other district; that the defendant is to abide any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe. Further, the conditions of pretrial release set forth in the order filed in this matter and a part of the record therein are further conditions of this bond.
         If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above-entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally, for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.
         It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned are duly exonerated by court order.
         This appearance bond fully incorporates by this reference each surety addendum attached hereto for those Sureties to this bond.

This bond signed on _1/14/2008_ , 20___ , at _SAN DIEGO, CA._.

Defendant's Signature: _Juan Meza P_

Surety's Signature: _Juan Meza P_

Surety's Signature: _____

Signature of Witness of Surety' Signature: _____

Signed and acknowledged before me, the witness, on _01 / 14_ , 20_08_ .

Approved: _____ , Federal Judge

**FILED**

**JAN 1 5 2008**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

K:\COMMON\CSA\forms\2005\BondForms.wpd

## AFFIDAVIT BY OWNER OF CASH SECURITY (complete if applicable)

I, _____, on oath say that the $ _____
cash deposited as security on the foregoing bond is owned by me and is to be returned to me at the address
listed on page one of this surety addendum upon exoneration of this bond.

I hereby subject said funds to the provisions of Local Court Rule 67.1 and consent and agree that in case
of default or contumacy on the part of the principal, the Court may, upon notice to me of not less than ten
days, proceed summarily and render judgment against said cash security in accordance with my obligation
herein and award execution thereon.

## JUSTIFICATION OF SURETY AND SURETY AGREEMENT

I, __JUAN MEZA- PADILLA__, the undersigned surety, declare under penalty of perjury, that
my net worth is the sum of $ __at least $115,000__ and that I have read and understand this two
page Surety Addendum in its entirety. I further understand that by signing the appearance bond and this
surety addendum to the appearance bond, I will be responsible for the defendant's appearances in court
and the defendant's compliance with all conditions of release as ordered by the court. If the defendant
does not appear or comply with the conditions of release, I will be required to pay the amount of the bond,
any security I have posted may be taken by the Government to satisfy the bond, and a judgment may be
entered against me. If judgment is entered against me a Judgment Lien will be filed with the County
Recorder in all appropriate counties for the full amount of the bond.

I declare under the penalty of perjury that all information contained in this bond and on this Surety
Addendum is true, accurate, and complete. (Penalty for false statements: $250,000 fine and/or five years
imprisonment, 18 U.S.C. § 1001.)

Signature of surety: __Juan Meza P__          Date: __1-14-08__

Printed name and address of witness to surety's signature: __Jack Karey__

__225 Broadway, Suite 700, San Diego, CA 92104.__

Signature of witness: __Jack Karey__          Date: __1-14-08__

AUSA __CEM__ (initials)          DEFENSE ATTORNEY __JJB__ (initials)

Page 2 of 2    Surety Addendum

## ADVICE OF PENALTIES AND SANCTIONS

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, an order of detention, as provided in 18 U.S.C. § 3148, and a prosecution for contempt as provided in 18 U.S.C. § 401 which could result in a possible term of imprisonment and/or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not less than two years nor more than ten years, if the offense is a felony; or a term of imprisonment of not less than ninety days nor more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

18 U.S.C. § 1503 makes it a criminal offense punishable by up to five years in jail and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. § 1510 makes it a criminal offense punishable by up to five years in jail and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. § 1512 makes it a criminal offense punishable by up to ten years in prison and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. § 1513 makes it a criminal offense punishable by up to ten years in jail and a $250,000 fine to retaliate against a witness, victim or informant, or threaten or attempt to do so.

It is a criminal offense under 18 U.S.C. § 3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant fails to appear or surrender and the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for another offense. In addition, a failure to appear may result in the forfeiture of any bail posted.

## ACKNOWLEDGMENT OF DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

Date: *1-14-08*                    *Susan Meza D*
                                   _____
                                   Signature of Defendant

K:\COMMON\CSA\forms\2005\BondForms.wpd

CASE NAME: United States v _JUAN  MEZA_    CASE NO. _07 MJ 2946_

## BAIL INFORMATION SHEET

Defendant Information:

Name: _JUAN  MEZA – PADILLA_

Date of Birth: _6/20/1969_         S.S.#: _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_

Immigration status: _NATURALIZED  U.S.C._  "A" Number: _____

Home address: _32859  BATSON  LN. ,  WILDOMAR  CA 92595_

_____ Home phone: _(951) 609-0572_

Employer's name: _____

Employer's address: _____

Length of employment: _____ Work phone: _____

Name(s), address(es), and phone number(s) of person(s) with whom defendant will live during pendency of case. _____

_MARIA DEL CARMEN MEZA, 32859 BATSON LN., WILDOMAR CA 92595_
_(951) 608-0572_

Name(s) address(es), and phone number(s) of person(s) residing in United States who will know how to contact defendant; aside from sureties on this bond. _____

_① LAURO RIVAS,_ _____

_____

Defense Attorney Information:

Name: _MICHAEL BETANCOURT_    Address: _225 BROADWAY, SUITE 900_

_SAN DIEGO, CA 92101._          Phone: _(619) 234-8467_

AUSA _CEM_ (Initials)

K:\COMMON\CSA\forms\2005\BondForms.wpd

# TARBELL, REALTORS

# COMPARATIVE  MARKET  ANALYSIS

## Market Study and Statistics

January 10, 2008

*Prepared Especially For*

# JUAN MEZA

*Prepared By*

## LAURO RIVAS

**Office: (951) 471-5333**
**Direct: (951) 326-5031**



# TARBELL, REALTORS

## Recent Sales

| Street# | Dir | Street Name |
|---------|-----|-------------|
| 18290 | | Don Juan St |
| 22018 | | Valley Terrace |
| 33745 | | Windmill Rd |
| 34831 | | Cherry St |
| 32825 | | Celeste Wy |
| 34474 | | Wheelbarrow Ln |
| 33148 | | Skylark Dr |
| 20294 | | Union St |



■ Sold Price ($)    □ List Price ($)

******* *STATISTICAL SUMMARY* *******

| Count | Lowest Sold | Highest Sold | Avg Sold Price | Avg Price/Sqft |
|-------|-------------|--------------|----------------|----------------|
| 8 | $160,000 | $320,000 | $247,250 | $165 |
| | Lowest Listed | Highest Listed | Avg List Price | Avg Price/Sqft |
| | $199,990 | $325,000 | $257,236 | $172 |

* Properties sold for an average of  96 %  of the listed price.
* Properties sold after an average of  146  days on the market.

2,280 X 165 = #376,200

# TARBELL, REALTORS

## *Recent Sales  - continued*

| 18290 | **Don Juan St - LKEL** | | Price Sold: | **$160,000** | S.Pr/Sq: | **$119** |
|---|---|---|---|---|---|---|
| Bedrms: **2** | Baths: **2.00** | Level: **One** | Garage: | Age: **30** | Sqft: | **1344** |

Escrow Closed: **07/17/07**  Days on market: **86**    Price Listed: **$225,000**  L.Pr/Sq: **$167**



**Features:** Lot: 21344 sqft, Horse Property, Patio, Family Room, Living Room, Master Bedroom, Walk-in Closet, Fireplace, Terms:SBMT

**Remarks:** Pending Date: 06/11/07. Lots Of Potential, Lot Is Flat .49 Acre.  Home Needs Tlc And Someone With A Vision.  Home Is Not On Foundation But Can Be Done In Escrow. Mother Died And Family Needs To Sell.  Please Bring Offer.

| 22018 | **Valley Terrace - WILD** | | Price Sold: | **$208,000** | S.Pr/Sq: | **$144** |
|---|---|---|---|---|---|---|
| Bedrms: **2** | Baths: **2.00** | Level: **One** | Garage: **2D** | Age: **29** | Sqft: | **1440** |

Escrow Closed: **11/09/07**  Days on market: **472**    Price Listed: **$199,990**  L.Pr/Sq: **$139**



**Features:** Lot: 10454 sqft, Patio, Formal Dining Room, Living Room, Master Bedroom, Central A/C, Built-in Range/Oven, Terms:CASH,CTNL, Great Room

**Remarks:** Pending Date: 10/15/07. Very Nice Mfg Hm On Permanent Foundation, Furnished (Dining Rm Entertainment Center Negotiable), Completely Fenced, 2-Car Stick Garage W/Workshop, Corner Lot, Fruit Trees, Xtra-Prkng, Private Patio, Very Clean, New A/C, Move-In Ready, Termite Complete & Final.

Case 3:08-cr-00090-LAB    Document 14    Filed 01/15/2008    Page 8 of 53

# TARBELL, REALTORS

## *Recent Sales   - continued*

| 33745 | | Windmill Rd - WILD | | | | Price Sold: | | $210,000 | S.Pr/Sq: | $134 |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **2** | Baths: | **2.00** | Level: | **One** | Garage: | **2D** | Age: **26** | Sqft: | **1568** |

Escrow Closed: **08/31/07**  Days on market: **122**   Price Listed:   **$205,000**  L.Pr/Sq:  **$131**

Features:  Lot: 10018 sqft, Family Room, Central A/C, Terms:CASH,CTNL, Assoc Club House/REC Facility, Assoc Gym/Exercise Room, Assoc Pool, Assoc Spa, Assoc Tennis, Main Floor Bedroom, Main Floor Master Bedroom

Remarks:  Pending Date: 08/04/07. Bank Owned And Priced To Sell. Located In The Farm This Two Bedroom / Two Bath Home Offers A Dining Area With Built-In Mirrored Hutch, Open Floor Plan, Laundry Room, Detached Two Car Garage And Large Yard For Gardening Complete With Tool Shed And Huge Covered Patio.

| 34831 | | Cherry St - WILD | | | | Price Sold: | $233,000 | S.Pr/Sq: | $116 |
|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **4** | Baths: | **3.00** | Level: | **One** | Garage: | Age: **5** | Sqft: | **2016** |

Escrow Closed: **10/03/07**  Days on market: **21**   Price Listed:   **$239,900**  L.Pr/Sq:  **$119**

Features:  Lot: 20037 sqft, Family Room, Terms:CTNL

Remarks:  Pending Date: 09/07/07. Seller Offers Good 95% Financing.  No Points, No Costs, No Prepay. Minimum 550 Fico, Call La For Details. Newer Mobile On Nearly 1/2 Flat Acre With Nice Hardscape And Concrete Driveway.. Needs Repairs. Bank Owned, Offered As Is With No Warranty. Spacious 4 Bedroom Plan Master Bedroom Suite Has One Full And One Three Quarter Bath. No Repairs Or Reports By Seller.

| 32825 | | Celeste Wy - WILD | | | | Price Sold: | $250,000 | S.Pr/Sq: | $158 |
|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **3** | Baths: | **2.00** | Level: | **One** | Garage: | Age: **23** | Sqft: | **1584** |

Escrow Closed: **01/07/08**  Days on market: **62**   Price Listed:   **$261,000**  L.Pr/Sq:  **$165**

Features:  Lot: 20473 sqft, Horse Property, Family Room, Central A/C, Fireplace, Terms:CASH,CTNL,SBMT

Remarks:  Pending Date: 09/20/07. This Is A Hud Home

# TARBELL, REALTORS

## *Recent Sales   - continued*

| 34474 | **Wheelbarrow Ln - WILD** | | Price Sold: | **$295,000** | S.Pr/Sq: | **$162** |
|---|---|---|---|---|---|---|
| Bedrms: | **3** | Baths: **2.00** | Level: **One** | Garage: **4** | Age: **24** | Sqft: **1825** |

Escrow Closed: **06/01/07**   Days on market: **90**   Price Listed: **$307,000**   L.Pr/Sq: **$168**



**Features:** Lot: 10454 sqft, Model: The Farm, RV Access, Patio, Security System, Family Room, Formal Dining Room, Master Bedroom, Bonus Room, Fireplace, Terms:SBMT, Assoc Pool, Direct Garage Access

**Remarks:** Pending Date: 05/27/07. 1/4 Acre Corner Lot In "The Farm". 3 Bedroom Manufactured Home On Permanent Foundation. 2 Car Attached Garage Plus Huge Rv Garage & Storage Room. Family Room, Dining Room, Full Kitchen Plus Bonus Room W/Fireplace. Enclosed Front Patio And Covered Back Porch. New Carpet, Paint And Window Blinds Throughout. Great Price For A Great Home!

| 33148 | **Skylark Dr - LKEL** | | Price Sold: | **$302,000** | S.Pr/Sq: | **$249** |
|---|---|---|---|---|---|---|
| Bedrms: | **3** | Baths: **2.00** | Level: **One** | Garage: | Age: **3** | Sqft: **1213** |

Escrow Closed: **06/14/07**   Days on market: **316**   Price Listed: **$295,000**   L.Pr/Sq: **$243**



**Features:** View, Lot: 11761 sqft, Trac: Lakeland Villa, Living Room, Central A/C, Terms:CASH,CTNL,FHA,FHMC,FNMA,VA, Cathedral Ceilings, Utility Room, Hills View, Workshop

**Remarks:** Pending Date: 04/24/07. 2 Houses On One 1/4 Acre Lot New Manufactured Home In Front With Central Air Conditioning Permanent Foundation With 433 Recorded For Fha Or Conventional Loan County Area Semi-Rural View Of Ortega Mountains 2 Story Guest House In Rear Built In 1978 As Barn Converted To Guest House 1 Bedroom/1 Bath W/Walk In Closet Large Lot W/Rv Access & Room For A Garage.

# TARBELL, REALTORS

## *Recent Sales  - continued*

| 20294 | | Union St - WILD | | | | Price Sold: | | $320,000 | S.Pr/Sq: | $238 |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **3** | Baths: | **2.00** | Level: | **One** | Garage: | **2D** | Age: **26** | Sqft: | **1344** |

Escrow Closed: **07/10/07**  Days on market:   **1**   Price Listed:   **$325,000**  L.Pr/Sq:   **$242**

**Features:** View, Lot: 25700 sqft, Horse Property, Family Room, Formal Dining Room, Living Room, Master Bedroom, Walk-in Closet, Office/Den, Central A/C, Terms:CASH,CTNL,SBMT, Hills View, RV Access/Parking, Utility Room

**Remarks:** Pending Date: 06/17/07. Well-Maintained Manufactured Home On Just Over 1/2 Acre; 3 Bedrooms, 2 Baths, Indoor Laundry, Den/Office/Family Room; Detached Two Car Garage; Two Large Storage Sheds; Concrete Patio. Electric Gate At Front With U-Shaped Driveway As Well As Straight Driveway Leading To Garage In Back; Rv And/Or Boat Parking; Horses Allowed; Dead-End Street; Presently Used As Construction Business Storage Yard And Possibilities Are Endless; Close To 15 Freeway, Schools

# TARBELL, REALTORS

## Properties Currently Listed for Sale



| Street# | Dir | Street Name |
|---|---|---|
| 19793 | | Olive Tree Ln |
| 33485 | | Skylark Dr |
| 21647 | | Waite St |
| 18318 | | Eucalyptus Av |
| 22470 | | Lemon Rd/Lost Rd |
| 33190 | | Wildomar Rd |
| 33460 | | Furrow Ct |

List Price ($)

### ******* *STATISTICAL SUMMARY* *******

| Count | Lowest Listed | Highest Listed | Avg List Price | Avg Price/Sqft |
|---|---|---|---|---|
| 7 | $174,900 | $384,900 | $269,543 | $180 |

| 19793 | Olive Tree Ln - LKEL | | Price Listed: | **$174,900** | L.Pr/Sq: | **$102** |
|---|---|---|---|---|---|---|

| Bedrms: | 3 | Baths: | 2.00 | Level: | One | Garage: | 0 | Age: | 23 | Sqft: | 1716 |
|---|---|---|---|---|---|---|---|---|---|---|---|

List Date:     **09/26/07**  Days on market: **106**
Features:  View, Lot: 11761 sqft, Family Room, Living Room, Central A/C, Terms:CASH,CTNL
Remarks:  Lender Owned Manufacture Home On Perm Foundation. 3 Bedroom 2 Bathrooms, Open Floor Plan.
Enclosed Work Shop Out Back. Sits On 11,761 Sq Ft Lot Close To The Lake And Schools.

| 33485 | Skylark Dr - LKEL | | Price Listed: | **$239,000** | L.Pr/Sq: | **$151** |
|---|---|---|---|---|---|---|

| Bedrms: | 3 | Baths: | 2.00 | Level: | One | Garage: | | Age: | 5 | Sqft: | 1586 |
|---|---|---|---|---|---|---|---|---|---|---|---|

List Date:     **11/05/07**  Days on market: **66**
Features:  View, Lot: 33541 sqft, Horse Property,
Terms:AITD,CVET,CASH,CTNL,CONT,FNMA,FHA,FHMC,LSOP,SBMT,TRDE,VA
Remarks:  Peacefull, Beatiful View, Lots Of Space Almost An Acre, Come And See It And Bring Your Offers!!!!
Offers Will Be Subject To A Short Sale Approval By The Lender Of Records

# TARBELL, REALTORS

## *Properties Currently Listed for Sale  - continued*

| 21647 | | Waite St - WILD | | | | Price Listed: | | **$239,000** | L.Pr/Sq: | **$178** |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **2** | Baths: | **2.00** | Level: | **One** | Garage: | **4A** | Age: **20** | Sqft: | **1344** |

List Date:     **07/23/07**  Days on market: **171**

**Features:**  View, Lot: 12195 sqft, Living Room, Master Bedroom, Walk-in Closet, Central A/C, Fireplace, Built-in Range/Oven, Terms:SBMT, Cathedral Ceilings, Freestanding, Main Floor Bedroom, Main Floor Master Bedroom

**Remarks:**  Manufactured Home (Permanent Foundation To Be Installed )Over 1/4 Of Acre (Large Tree Shaded Lot)Mature Trees,Close To Elks Lodge & Baseball Diamind, Also Close To Casino.2 Bedrooms And 2 Full Baths, Rock Fireplace (Gas Starter )Very Cozy Home In Wildomar.Central Air Conditioner , Large Kitchen With Microwave (2)Great Home For First Time Buyers.2 Sheds In Rear /Washer And Dryer Hook Ups In Shed.Built In Hutch In Dinning Room.

| 18318 | | Eucalyptus Av - LKEL | | | | Price Listed: | | **$249,999** | L.Pr/Sq: | **$174** |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **3** | Baths: | **2.00** | Level: | **One** | Garage: | | Age: **30** | Sqft: | **1440** |

List Date:     **11/15/07**  Days on market:  **56**

**Features:**  Lot: 17424 sqft, Patio, Family Room, Formal Dining Room, Living Room, Master Bedroom, Central A/C, Terms:CTNL,SBMT, Main Floor Bedroom, Main Floor Master Bedroom, RV Access/Parking

**Remarks:**  Bring Your Toys Or Work Trucks! This Cute Manufactured Home Sits On A .40 Acre Lot. Fully Fenced With An Impressive Rod Iron Gate Entry. This Little Darling Offers A Living Room With Crown Molding  And A Separate Dining Room Area. The Kitchen Offers Newer Appliances And Sink.  The Master Bedroom Is Set Away From Bedroom #2 , For Extra Privacy. The Master Bathroom Has Been Remodeled, Complete With Travertine Tile, Newer Tub & Shower.  Huge Big Screen Tv,Washer,Dryer,Refrigerat

| 22470 | | Lemon Rd/Lost Rd - WILD | | | | Price Listed: | | **$270,000** | L.Pr/Sq: | **$208** |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | **3** | Baths: | **2.00** | Level: | **One** | Garage: | | Age: **9** | Sqft: | **1300** |

List Date:     **05/25/07**  Days on market: **230**

**Features:**  View, Lot: 17424 sqft, Horse Property, Living Room, Central A/C, Terms:SBMT, RV Access/Parking, Valley View

**Remarks:**  Seller Will Carry Paper!!!!Great Mfg Home On A Higher Elevated Lot.  This Is A 3 Bedroom (All With Walk-In Closets), 2 Bath Home In Move-In Condition. There Are Ceiling Fans In Both The Kitchen And Living/Family Room. It Has A Long Concrete Driveway That Leads Up To A Front Patio Area With A Flowing Water Fountain And Interlocking Pavers.  The Property Has 2 Rv Hook Ups, The One Above Has Water, Electric, And Sewage, And The Rv Hook Up Below Has Water And Electric Both Are Pe

# TARBELL, REALTORS

## *Properties Currently Listed for Sale - continued*

| 33190 | | Wildomar Rd - WILD | | | | Price Listed: | | $329,000 | L.Pr/Sq: | $220 |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | 4 | Baths: | 2.00 | Level: | One | Garage: | 2D | Age: | 2 | Sqft: | 1493 |

List Date:     **10/02/06**  Days on market: **465**



Photos not supplied by listing broker at this time.

**Features:** View, Lot: 10400 sqft, Family Room, Master Bedroom, Walk-in Closet, Central A/C, Terms:CASH,CTNL,FHA, Cathedral Ceilings, RV Access/Parking

**Remarks:** New 2006 Manuf.Home On Permanent Foundation. . 1493 Sq Ft, 4 Bed, 2 Bath. Master Suite Has Shower & Tub With Walkin Closet. Ceiling Fans In All Rooms. Central A/C. Fridge, Dw, Range, Microwave. Hardwood Cabinets. New 2-Car Garage Being Built & 40' Storage Container Included. Full Landscape, Grass, Sprinklers, Trees. Brand New, Beautiful.

| 33460 | | Furrow Ct - WILD | | | | Price Listed: | | $384,900 | L.Pr/Sq: | $226 |
|---|---|---|---|---|---|---|---|---|---|---|
| Bedrms: | 3 | Baths: | 2.00 | Level: | One | Garage: | 5D | Age: | 21 | Sqft: | 1704 |

List Date:     **08/13/07**  Days on market: **150**

**Features:** Lot: 18730 sqft, Trac: The Farm, Patio, Family Room, Formal Dining Room, Living Room, Bonus Room, Walk-in Closet, Wet Bar, Central A/C, Fireplace, Terms:CASH, Assoc Club House/REC Facility, Assoc Pool, Main Floor Master Bedroom, Mountain View, RV Access/Parking

**Remarks:** Awesome Property Featuring A Six (Yes 6) Car Garage Or Rv Parking And 4 Car Garage, A Perfect Workshop! Located In The Farm This 3 Bedrooms/2 Full Baths Home Also Features An Added On Sunroom/Office. Large Family Room Complete With Fireplace. The Master Bedroom Boasts A Large Walk In Closet And A Full Size Bath. Located At The End Of The Cul De Sac This Home Sits On A Very Large Lot. Garage T Is Approximately 2400 Sq. Ft, Large Enough For An Rv And/Or Up To 6 Cars! Must S

# TARBELL, REALTORS

## Summary Analysis

# TARBELL, REALTORS

# Summary

## Recent Sales

| Street# | Dir | Street Name | BR | Baths | Level | Grg | Age | Sqft | List Price | Pr/Sq | Date | DOM | Sold Price | Pr/Sq |
|---------|-----|-------------|----|-------|-------|-----|-----|------|-----------|-------|------|-----|-----------|-------|
| 18290 | | Don Juan St | 2 | 2.00 | One | | 30 | 1344 | $225,000 | $167 | 07/17/07 | 86 | $160,000 | $119 |
| 22018 | | Valley Terrace | 2 | 2.00 | One | 2D | 29 | 1440 | $199,990 | $139 | 11/09/07 | 472 | $208,000 | $144 |
| 33745 | | Windmill Rd | 2 | 2.00 | One | 2D | 26 | 1568 | $205,000 | $131 | 08/31/07 | 122 | $210,000 | $134 |
| 34831 | | Cherry St | 4 | 3.00 | One | | 5 | 2016 | $239,900 | $119 | 10/03/07 | 21 | $233,000 | $116 |
| 32825 | | Celeste Wy | 3 | 2.00 | One | | 23 | 1584 | $261,000 | $165 | 01/07/08 | 62 | $250,000 | $158 |
| 34474 | | Wheelbarrow Ln | 3 | 2.00 | One | 4 | 24 | 1825 | $307,000 | $168 | 06/01/07 | 90 | $295,000 | $162 |
| 33148 | | Skylark Dr | 3 | 2.00 | One | | 3 | 1213 | $295,000 | $243 | 06/14/07 | 316 | $302,000 | $249 |
| 20294 | | Union St | 3 | 2.00 | One | 2D | 26 | 1344 | $325,000 | $242 | 07/10/07 | 1 | $320,000 | $238 |
| | | | | | | | **Average:** | | $257,236 | $172 | | | $247,250 | $165 |

## Properties Currently Listed for Sale

| Street# | Dir | Street Name | BR | Baths | Level | Grg | Age | Sqft | List Price | Pr/Sq | Date | DOM |
|---------|-----|-------------|----|-------|-------|-----|-----|------|-----------|-------|------|-----|
| 19793 | | Olive Tree Ln | 3 | 2.00 | One | 0 | 23 | 1716 | $174,900 | $102 | 09/26/07 | 106 |
| 33485 | | Skylark Dr | 3 | 2.00 | One | | 5 | 1586 | $239,000 | $151 | 11/05/07 | 66 |
| 21647 | | Waite St | 2 | 2.00 | One | 4A | 20 | 1344 | $239,000 | $178 | 07/23/07 | 171 |
| 18318 | | Eucalyptus Av | 3 | 2.00 | One | | 30 | 1440 | $249,999 | $174 | 11/15/07 | 56 |
| 22470 | | Lemon Rd/Lost Rd | 3 | 2.00 | One | | 9 | 1300 | $270,000 | $208 | 05/25/07 | 230 |
| 33190 | | Wildomar Rd | 4 | 2.00 | One | 2D | 2 | 1493 | $329,000 | $220 | 10/02/06 | 465 |
| 33460 | | Furrow Ct | 3 | 2.00 | One | 5D | 21 | 1704 | $384,900 | $226 | 08/13/07 | 150 |
| | | | | | | | **Average:** | | $269,543 | $180 | | |

# TARBELL, REALTORS

## Statistical Analysis

### Sold / Listing Price Analysis

Listing Status

Recent Sales - Price Sold

Recent Sales - Price Listed

Pending Sales (Under Contract)

Properties Currently Listed for Sale

Expired Listings / Failed to Sell



☐ Price Range ($)    ■ Average Price ($)

### Sale Information Summary

|  | Count | Lowest Sold | Highest Sold | Avg Sold Price | Avg Pr/Sq |
|---|---|---|---|---|---|
| Recent Sales - Price Sold | 8 | $160,000 | $320,000 | $247,250 | $165 |

### Listing Information Summary

|  | Count | Lowest Listed | Highest Listed | Avg List Price | Avg Pr/Sq |
|---|---|---|---|---|---|
| Recent Sales - Price Listed | 8 | $199,990 | $325,000 | $257,236 | $172 |
| Pending Sales (Under Contract) | 0 |  |  |  |  |
| Properties Currently Listed for Sale | 7 | $174,900 | $384,900 | $269,543 | $180 |
| Expired Listings / Failed to Sell | 0 |  |  |  |  |

* Properties sold for an average of 96 % of the listed price.
* Properties sold after an average of 146 days on the market.

# TARBELL, REALTORS

## MLS Data Reference

| | | | |
|---|---|---|---|
| **Client:** | JUAN MEZA | **Date:** | January 10, 2008 |
| **Address:** | 32859<br>WILDOMAR, CA 92595 | **Property:** | 32859<br>WILDOMAR, CA 92595 |
| **Bedroom:** | 4 | **Amenities:** | |
| **Bathroom:** | 2 | | |
| **Sqft:** | 2,280 | | |

### Recent Sales

| MLS# | Stat | Street# | Dir | Street Name | TG# | Listing Office | Phone# |
|---|---|---|---|---|---|---|---|
| T713684 | S | 18290 | | Don Juan St | 866D1 | Coldwell Banker Res-L | 951-674-8631 |
| T613730 | S | 22018 | | Valley Terrace | 897B3 | Rancon Real Estate | 951-676-5736 |
| T07050539 | S | 33745 | | Windmill Rd | 897H3 | Oak Tree Realty Group | 951-973-7265 |
| T07122694 | S | 34831 | | Cherry St | 897C5 | Buyline Real Estate | 951-301-1179 |
| I07109752 | S | 32825 | | Celeste Wy | 897A7 | Realty Executives-Rc | 909-291-4500 |
| T702870 | S | 34474 | | Wheelbarrow Ln | 897H4 | The 951 Property Expe | 951-776-7378 |
| H607848 | S | 33148 | | Skylark Dr | 896G5 | Home Works Real Esta | 800-840-2248 |
| T07089125 | S | 20294 | | Union St | 896J5 | Realty Benefit | 949-461-7900 |

### Properties Currently Listed for Sale

| MLS# | Stat | Street# | Dir | Street Name | TG# | Listing Office | Phone# |
|---|---|---|---|---|---|---|---|
| T07142432 | A | 19793 | | Olive Tree Ln | 896G5 | Century 21 Premier Re | 951-674-6943 |
| T07161021 | A | 33485 | | Skylark Dr | 896G4 | Coldwell Banker Res-M | 951-304-2900 |
| T07108154 | A | 21647 | | Waite St | 897B3 | Century 21 Premier Re | 951-674-6943 |
| T07165609 | A | 18318 | | Eucalyptus Av | 836D7 | Coldwell Banker Assoc | 951-698-2323 |
| T07078028 | A | 22470 | | Lemon Rd/Lost Rd | 897D2 | Century 21 Award-Tem | 951-491-7000 |
| Z607391 | A | 33190 | | Wildomar Rd | 897A2 | Remax Homes And Estat | 714-453-3130 |
| I07119739 | A | 33460 | | Furrow Ct | 897H2 | Coldwell Banker Assoc | 951-244-1867 |

3014,HIMS

# LANDWOOD TITLE

01/10/2008 08:18 AM PST
RIVERSIDE 2007-08 TAX ROLL

Report Origination ID: 83-W01-3014

| | | |
|---|---|---|
| APN | 370-371-005-6 | PAYMENTS AS OF 01/04/2008 |
| TRA | 065-137 - COUNTY OF RIVERSIDE | |
| Legal | .65 ACRES NET IN PAR 2 PM 080/075 PM 13249 2003 PALM HARBOR | |
| Situs | 32859 BATSON LN | |
| Mail | 32859 BATSON LN WILDOMAR CA 92595 | |
| Acq Date : Doc No. | 04/2004 : 0288928 | |
| Assessed Owner | MEZA JUAN | |

| Assessed | Values | Taxes | 1st Half | 2nd Half |
|---|---|---|---|---|
| Land | 84,896 | Status | PAID | OPEN |
| Improvements | 163,261 | Payment Date | 12/10/2007 | |
| | | Total Tax | | 2,534.12 |
| | | Tax Install | 1,267.06 | 1,267.06 |
| | | Penalty | 126.71 | 146.71 |
| | | Balance Due | .00 | 1,267.06 |
| Net | 248,157 | Total Taxes Due | | 1,267.06 |

## Special Assessments Included In Tax Amounts

| Fund | Type | Description | Amount |
|---|---|---|---|
| 68-1847 | LANDSCAPE | LMD 2006-1 WILDOMAR PARKS | 28.00 |
| 68-5360 | MISC ASMNT | MWD STANDBY - WEST | 9.22 |
| 68-1379 | FLOOD CONT | NPDES - SANTA MARGARITA | 4.18 |
| | | TOTAL OF SPECIAL ASSESSMENTS | 41.40 |

### Additional Property Information

| TAX CODE | USE CODE | VESTING | PUI CODE | ACREAGE | STAMP AMOUNT | TAX RATE |
|---|---|---|---|---|---|---|
| 000 | MF | MS | M02 | | 253.00 P | 1.00450% |

### Reference Notices

YR: 2007-08

BILL: 000763408
** SEE PRIOR YEAR DELQ TAXES; NO BONDS **

3014,HIMS

# LANDWOOD TITLE

01/10/2008 08:18 AM PST
RIVERSIDE 2007-08 TAX ROLL

Report Origination ID: 83-W01-3014

**APN  370-371-005-6**
Year Of Sale  2007

UPDATED AS OF 12/13/2007

### Prior Years Delinquent

| Delinquent Year | APN | Bill Type | Date | Installment | Tax Amount |
|---|---|---|---|---|---|
| 2005 | 052-388-041 | SUPP | 07/06/2006 | BOTH | 26.92 |

### Amounts To Redeem For

| JAN 2008 | FEB 2008 | MAR 2008 |
|---|---|---|
| 67.43 | 67.84 | 68.24 |

## End Of Report

RECORDING REQUESTED BY:

**AND WHEN RECORDED MAIL TO:**

NAME    County of Riverside
       Dept. Building & Safety
STREET   4080 Lemon St., 7th Fl
ADDRESS  P. O. Box 1605
CITY,   Riverside, CA 92501-1605
STATE
and ZIP

TLMA 1083 MARK

DOC # 2004-0081276
02/04/2004 08:00A Fee:10.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|   | 1 | 2 |   |   |   |   |   |   |   |
| A | R | L |   |   | 1 |   |   | DP |   |
|   |   |   | COPY | LONG | REFUND | NCHG | EXAM |   |   |

C
DP

## NOTICE OF MANUFACTURED HOME (MOBILEHOME) OR COMMERCIAL COACH,
### INSTALLATION ON A FOUNDATION SYSTEM

Recording of this document at the request of the local agency indicated is in accordance with California Health and Safety Code Section 18551. This document is evidence that such local agency has issued a certificate of occupancy for installation of the unit described hereon, upon the real property described with certainty below, as of the date of recording. When recorded, this document shall be indexed by the county recorder to the named owner of the real property and shall be deemed to give constructive notice as to its contents to all persons thereafter dealing with the real property.

Mark Oscarson
REAL PROPERTY OWNER/LESSOR

1826 Walnut Lane
MAILING ADDRESS

Eagan          MN    55122
CITY          COUNTY    STATE    ZIP

32859  Batson Lane
INSTALLATION MAILING ADDRESS, IF DIFFERENT

Lake Elsinore, Riverside CA 92595
CITY          COUNTY    STATE    ZIP

Malcolm Oscarson
UNIT OWNER (If also property owner, write "SAME")

3848 Myrtle Avenue
MAILING ADDRESS

Long Beach , L.A.  CA 90807
CITY          COUNTY    STATE    ZIP

Riverside County Building + Safety
LOCAL AGENCY ISSUING PERMIT and CERTIFICATE OF OCCUPANCY

4080 Lemon Street 7th Floor
MAILING ADDRESS

Riverside, Riverside, CA  92501
CITY          COUNTY    STATE    ZIP

BMR 040215   (909) 955-1800
BUILDING PERMIT NO.   TELEPHONE NUMBER

Gerald Mull        2-4-04
SIGNATURE OF LOCAL AGENCY OFFICIAL   DATE

Palm Harbor Village
DEALER NAME (If not a dealer sale, write "NONE")

Lic #7061
DEALER LICENSE NO.

**UNIT DESCRIPTION**

Palm Harbor Homes, Inc. 10/16/2003 Palm Harbor DVPX 76H2
MANUFACTURER'S NAME      DATE OF MANUFACTURE   MODEL NAME/NUMBER

PH19-3931A/B              76'x30' ARZ0000274037, ARZ0000274038
SERIAL NUMBER(S)          LENGTH X WIDTH       INSIGNIA/LABEL NUMBER(S)

REAL PROPERTY LEGAL DESCRIPTION   ASSESSOR'S PARCEL NUMBER 370-371-005

Parcel 2, together with Lot C, of Parcel Map 13249
on file in Book 80 pages 75 through 76 of
Parcel Maps, Records of Riverside County,
California

HCD FORM 433(A)  Rev. 8/91

WHITE—County Recorder    CANARY—HCD    PINK—Applicant    GOLDENROD—Building Dept.

MANUFACTURED HOME (MOBILEHOME) OR COMMERCIAL COACH
INSTALLATION ON A FOUNDATION SYSTEM
HCD FORM 433(A) 8/91

The original and three (3) copies of this form are to be completed with all available information at the time a building permit is issued for the installation of a manufactured home (mobilehome) or a commercial coach on a foundation system pursuant to Section 18551 of the Health and Safety Code.

After the installation has been completed, and on the same day the certificate of occupancy has been issued, the local building department shall record this form (completed in full) with the local county recorder.

Upon recordation, the local building department shall transmit a completed copy of this form (green copy), a copy of the certificate of occupancy, fees collected in the amount of $11 per transportable section, and (if unit currently titled as personal property) all applicable titles, certificates, license plates or decals to:

    Department of Housing and Community Development
    Division of Codes and Standards
    Manufactured Housing Section
    Post Office Box 31
    Sacramento, CA 95801        (916) 445-3338

Users who may have questions or need additional information, instructional materials, or reporting forms, regarding foundation system installation requirements or reporting procedures, should contact the Manufactured Housing Section at the address or telephone number shown above.



2004-0081276
02/04/2004 08:00A
2 of 2

**Recording Requested By**
First American Title Company

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
Juan Meza
32859 Batson Lane
Wildomar, CA 92595

DOC # 2004-0288928
04/21/2004 08:00A Fee:27.00
Page 1 of 1 Doc T Tax Paid
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder



A.P.N.: 370-371-005  TRA #: 065-137      Ord

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $253.00
[ ] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[x] unincorporated area of Wildomar [ ] City of and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
Mark J. Oscarson, a Single Man

hereby GRANT(S) to Juan Meza, a Married Man as his Sole and Separate Property

the following described property in the unincorporated area of Wildomar, County of Riverside State of California;

Parcel 2, together with lot C, of Parcel Map 13249 on file in book 80 pages 75 through 76 of Parcel Maps, Records of Riverside County, California.

APN:370-371-005-6

Mark J. Oscarson

Document Date: April 14, 2004

STATE OF Minnesota )SS
COUNTY OF Dakota )
On April 16th 2004 before me, Shirley Lorentz, a notary public
personally appeared Mark J. Oscarson
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature Shirley Lorentz

SHIRLEY LORENTZ
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

This area for official notarial seal.

Mail Tax Statements to:  SAME AS ABOVE or Address Noted Below

**Recording Requested By**
First American Title Company

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

*MARIA MEZA*
*32859 BATSON LANE*
*WILDOMAR, CA 92595*

DOC # 2004-0288929
04/21/2004 08:00A Fee:30.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | 8 | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   |      |      |     |      |       |     |       |
| A | R | L |      |      | COPY | LONG | REFUND | NCHG | EXAM |

A.P.N.: 370-371-005   TRA #: 065-137      Ord

## QUITCLAIM DEED

30

THE UNDERSIGNED GRANTOR(s) DECLARE(s) DOCUMENTARY TRANSFER TAX  $NONE
[ X ]  computed on full value of property conveyed, or
[ X ]  computed on full value less value of liens or encumbrances remaining at time of sale,
[ X ]  unincorporated area;  [ X ] City of Wildomar , and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
Maria Meza

hereby remise, release and forever quitclaim to
**Juan Meza, A Married Man as his sole and separate property**

the following described property in the City of Wildomar, County of Riverside State of California;

**Parcel 2, together with lot C, of Parcel Map 13249 on file in book 80 pages 75 through 76 of Parcel Maps, Records of Riverside County, California.**

"This conveyance establishes sole and separate property of a spouse, R&T 11911."

"It is the express intent of the Grantor, being the spouse of the Grantee to convey all right, title and interest of the Grantor, community or otherwise, in and to the herein described property to the Grantee as her sole and separate property."

T
YS

QUITCLAIM DEED CONTINUED ON NEXT PAGE

Mail Tax Statements to:   SAME AS ABOVE or Address Noted Below

A.P.N.: 370-371-005

QUITCLAIM DEED - CONTINUED

MARIA MEZA

Maria Meza

Document Date:   March 16, 2004

STATE OF CALIFORNIA                          )SS
COUNTY OF Riverside                          )
On April 14, 2004                            before me, Kathryn Householder, Notary Public

personally appeared Maria Meza

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Kathryn Householder

This area for official notarial seal.



KATHRYN HOUSEHOLDER
Commission # 1382845
Notary Public - California
Riverside County
My Comm. Expires Nov 2, 2006

**Recording Requested By**
First American Title Company

Recording Requested By:
~~FIRST AMERICAN~~

Return To:
NATIONAL CITY MORTGAGE CO.
P.O. BOX 809068
DALLAS, TX 75380-9068



DOC # 2004-0288930
04/21/2004 08:00A Fee:88.00
Page 1 of 21
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

Prepared By:
KATHY HENSLEY
NATIONAL CITY MORTGAGE CO.
P.O. BOX 809068
DALLAS, TX 75380-9068

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|----|------|-------|-----|-------|
|   |   | / | 21   |      | /  |      |       |     |       |
| A | R | L |      |      |    | COPY | LONG | REFUND | NCHG | EXAM |

[Space Above Th

## DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **April 13, 2004**
together with all Riders to this document.

(B) "Borrower" is

JUAN MEZA A Married Man as His Sole and Separate Property

Borrower's address is **32859 BATSON LN WILDOMAR, California 92595**
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is **National City Mortgage Co dba**
**Accubanc Mortgage**
Lender is a **corporation**
organized and existing under the laws of **The State of Ohio**

CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01

-6(CA) (0207)
Page 1 of 18          Initials: JM.

VMP MORTGAGE FORMS - (800)521-7291



Lender's address is  **3232 Newmark Drive, Miamisburg, OH  45342**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  **NATIONAL CITY MORTGAGE CO**

(E) "Note" means the promissory note signed by Borrower and dated **April 13, 2004**
The Note states that Borrower owes Lender
**ONE HUNDRED EIGHTY FOUR THOUSAND & 00/100**                                                Dollars
(U.S. $          **184,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     **May 1, 2034**                .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify]  **POA/MANUF AFFIX** |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(CA) (0207)                          Page 2 of 15                  Initials:                   Form 3005  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **Riverside** :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]


**SEE ATTACHED LEGAL DESCRIPTION**


Parcel ID Number:    **370-371-005-6**                        which currently has the address of
          **32859 BATSON LN,**                                                   [Street]
          **WILDOMAR**                          [City], California    **92595**    [Zip Code]
("Property Address"):

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

      1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(CA) (0207)                          Page 3 of 15                    Initials: _____          Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

-6(CA) (0207)                     Page 4 of 15          Initials: _JM_          Form 3005  1/01

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

-6(CA) (0207)                          Page 6 of 15                    Initials: [signature]                Form 3005  1/01

the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0207)                          Page 7 of 15              Initials: _J.M._              Form 3005  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

-6(CA) (0207)                    Page 8 of 15          Initials: _____          Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-6(CA) (0207)                          Page 9 of 15                Initials:             Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

-6(CA) (0207)                    Page 10 of 16                    Initials: SHL                    Form 3005   1/01

not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

Printed on 1/10/2008 8:17:50 AM    Provided by Data Trace System

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6(CA) (0207)                          Page 13 of 15                Initials: _____        Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_Juan Meza_ _____ (Seal)
JUAN MEZA                        -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)         _____ (Seal)
         -Borrower                       -Borrower

_____ (Seal)         _____ (Seal)
         -Borrower                       -Borrower

_____ (Seal)         _____ (Seal)
         -Borrower                       -Borrower

-6(CA) (0207)              Page 14 of 15              Form 3005  1/01

State of California
County of Riverside

On *April 13, 2004*    before me, *Kathryn Householder, Notary Public* } ss.

personally appeared

*Juan Meza*

, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



KATHRYN HOUSEHOLDER
Commission # 1382845
Notary Public - California
Riverside County
My Comm. Expires Nov 2, 2006

*Kathryn Householder*  (Seal)

Initials: _JM._

-6(CA) (0207)          Page 15 of 15          Form 3005  1/01

MANUFACTURED HOME
AFFIDAVIT OF AFFIXATION

STATE OF    **California**            )
                                      ) ss.:
COUNTY OF   **Riverside**             )

**BEFORE ME,** the undersigned notary public, on this day personally appeared

*[type the name(s) of each Homeowner signing this Affidavit]:*

known to me to be the person(s) whose name(s) is/are subscribed below (each a "Homeowner"), and who, being by me first duly sworn, did each on his or her oath state as follows:

1.  Homeowner owns the manufactured home ("Home") described as follows:

| New/Used | Year | Manufacturer's Name | Model Name and Model No. | Manufacturer's Serial No. | Length / Width |
|---|---|---|---|---|---|
| | | | | | |

2.  The Home was built in compliance with the federal Manufactured Home Construction and Safety Standards Act.
3.  If the Homeowner is the first retail buyer of the Home, Homeowner is in receipt of (i) the manufacturer's warranty for the Home, (ii) the Consumer Manual for the Home, (iii) the Insulation Disclosure for the Home, and (iv) the formaldehyde health notice.
4.  The Home is or will be located at the following "Property Address":

| 32859 BATSON LN WILDOMAR | Riverside | California 92595 | |
|---|---|---|---|
| Street or Route    City | County | State | Zip Code |

5.  The legal description of the real property where the Home is or will be permanently affixed ("Land") is:

6.  The Homeowner is the owner of the Land or, if not the owner of the land, is in possession of the real property pursuant to a lease in recordable form, and the consent of the lessor is attached to this Affidavit.
7.  The Home [___] is [___] shall be anchored to the Land by attachment to a permanent foundation, constructed in accordance with applicable state and local building codes and manufacturer's specifications in a manner sufficient to validate any applicable manufacturer's warranty, and permanently connected to a residential utility (e.g., water, gas, electricity, sewer) ("permanently affixed").
8.  The Home shall be assessed and taxed as an improvement to the Land.
9.  Homeowner agrees that as of today, or if the Home is not yet located at the Property Address, upon the delivery of the Home to the Property Address:
    (a)  All permits required by governmental authorities have been obtained;
    (b)  The foundation system for the Home was designed by an engineer to meet the soil conditions of the Property Address.  . All foundations are constructed in accordance with applicable state and local building codes, and manufacturer's specifications in a manner sufficient to validate any applicable manufacturer's warranty.
    (c)  The wheels, axles, towbar or hitch were removed when the Home was, or will be, placed on the Property Address;
    (d)  The Home is (i) permanently affixed to a foundation, (ii) has the characteristics of site-built housing, and (iii) is part of the Land; and
    (e)  The Home is permanently connected to a septic tank or sewage system and other utilities such as electricity, water and natural gas.
10. If the Homeowner is the owner of the Land, any conveyance or financing of the Home and the Land shall be a single transaction under applicable state law.
11. The Home is subject to the following security interests (each, a "Security interest"):
    Name of Lienholder:                          Name of Lienholder
    Address:                                     Address:
    Original Principal Amount Secured:           Original Principal Amount Secured:
12. Other than those disclosed in this Affidavit , the Homeowner is not aware of (i) any other claim, lien or encumbrance affecting the Home, (ii) any facts or information known to the applicant that could reasonably affect the validity of the title of the Home or the existence or non-existence of security interests in it.
12. A release of lien from each of the lien holders identified in paragraph 11 of this Affidavit [___] has been [___] shall be delivered to the commissioner of motor vehicles.

AFFIX1 (9/03)                        PAGE 1 OF 3                        REV: 09/20/03

14. A Homeowner shall initial only one of the following, as it applies to title to the Home:

[____] The Home is not covered by a certificate of title. The original manufacturer's certificate of origin, duly endorsed to the Homeowner, is attached to this affidavit.

[____] The Home is not covered by a certificate of title. After diligent search and inquiry, the Homeowner is unable to produce the original manufacturer's certificate of origin.

[____] The Home is covered by a certificate of title issued on _____ of _____, ____, title number _____, which the Homeowner shall surrender.

[____] The Home is covered by a certificate of title. After diligent search and inquiry, the Homeowner is unable to produce the original Certificate of Title.

15. The Homeowner designates the following person to record this Manufactured Home Affixation Affidavit and upon its recording it shall be returned by the recording officer in the real property records where the home is to be located to same:

Name:

Address:

16. This Affidavit is executed by Homeowner(s) pursuant to applicable state law.

AFFIX2 (9/03)                    PAGE 2 OF 3                    REV: 09/20/03

IN WITNESS WHEREOF, Homeowner(s) has executed this Affidavit in my presence and in the presence of the undersigned witnesses on this ___13th___ day of ___april_____ _____2004____.

_Juan Meza_____ (SEAL)          _Kathryn Householder____
Homeowner #1                        Witness
_Juan Meza_____
Printed Name

_____ (SEAL)          _____
Homeowner #2                        Witness

_____
Printed Name

_____ (SEAL)          _____
Homeowner #3                        Witness

_____
Printed Name

_____ (SEAL)          _____
Homeowner #4                        Witness

_____
Printed Name

STATE OF ___California___ )
                          ) ss.:
COUNTY OF ___Riverside___ )

On the ___13th___ day of ___april_____ in the year _2004__ before me, the undersigned, a Notary Public in and for said State, personally appeared ___Juan Meza_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_Kathryn Householder_____
Notary Signature
_Kathryn Householder_____
Notary Printed Name

Notary Public; State of _California_____
Qualified in the County of _Riverside_____
My commission expires: _Nov 2, 2006_____
Official Seal:

```
KATHRYN HOUSEHOLDER
Commission # 1382845
Notary Public - California
Riverside County
My Comm. Expires Nov 2, 2006
```

ATTENTION COUNTY CLERK: This instrument covers goods that are or are to become fixtures on the Property described herein and is to be filed for record in the records where conveyances of real estate are recorded.

AFFDX3 (9/03)                    PAGE 3 OF 3                    REV: 09/20/03

## MANUFACTURED HOME LIMITED POWER OF ATTORNEY

(To execute title, security filing, transfer of equity and insurance documents and proceeds)

The undersigned ("I" or "me") residing at ___32859 BATSON LN_____

City __WILDOMAR_____ County __Riverside_____ State ____California_____ Zip _92595___

Buyer of the following manufactured home:

Year:____ Make: _____    Model: _____    Size: _____    Serial #:_____

does hereby irrevocably make, constitute, appoint and authorize with full powers of substitution, **[LENDER]** ("**[Lender]**"), **[Lender Address]**, its successors, assigns or designees as my agent and attorney-in-fact, in my name, place and stead in any way which I could do, if I were personally present, with full power of substitution and delegation, (1) to execute and deliver, in my name or [Lender]'s name, any and all forms, certificates, assignments, designations or other documentation as may be necessary or proper to make application for and obtain the certificate of title for the manufactured home designated above, and to have [Lender] (or its designee) designated as first lienholder on the certificate of title for the manufactured home, (2) to receive, execute or endorse, and deliver in my name or [Lender]'s name any and all claim forms, agreements, assignments, releases, checks, drafts or other instruments and vehicles for the payment of money, relating to any insurance covering the manufactured home or the indebtedness secured by the manufactured home, and (3) to sign and file, without my signature, such financing and continuation statements, amendments, and supplements thereto, and other documents which [Lender] may from time to time deem necessary to perfect, preserve and protect [Lender]'s security interest in the manufactured home and any other property sold with it.

To induce any third party to act hereunder, I hereby agree that any third party receiving a duly executed copy or facsimile of this instrument may act hereunder, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such third party from and against any and all claims that may arise against such third party by reason of such third party having relied on the provisions of this instrument. I have given this Power of Attorney in connection with a loan/financing to be given by [Lender] and to induce [Lender] to make the financing available. It is coupled with an interest in the transaction and is irrevocable. This power of attorney shall not be affected by my subsequent disability, incapacity or incompetence. I do further grant unto said Attorney-in-Fact full authority and power to do and perform any and all acts necessary or incident to the execution of the powers herein expressly granted, as fully as I might or could do if personally present.

WITNESS my hand and seal this 13th day of April , 2004

Signed and acknowledged in the presence of:

_Kathy Householder_                          _Juan Meza_
Witness #1                                    Borrower

_Kathy Householder_                          **JUAN MEZA**
Printed Name                                  Printed Name

_____
Witness #2

_____
Printed Name

POAMH1 (9/03)                    PAGE 1 OF 2                    REV: 09/20/03

STATE OF <u>California</u>                    )
                                                                      ) ss.:
COUNTY OF <u>Riverside</u>                   )

On this <u>13th</u> day of <u>April</u> <u>2004</u>, before me the subscriber personally appeared <u>Juan Meza</u> (and) _____ to me known and known to me to be the same person(s) described in and who executed the foregoing instrument, and (s)he/they duly (jointly and severally) acknowledged to me that (s)he/they executed the same.

<u>Kathryn Householder</u>
Notary Signature

<u>Kathryn Householder</u>
Notary Printed Name

Notary Public; State of <u>California</u>
Qualified in the County of <u>Riverside</u>
My commission expires: <u>Nov 2, 2006</u>

Official Seal:



KATHRYN HOUSEHOLDER
Commission # 1382845
Notary Public - California
Riverside County
My Comm. Expires Nov 2, 2006

POAMH2 (9/03)                              PAGE 2 OF 2                              REV: 09/20/03

Parcel 2, together with lot C, of Parcel Map 13249 on file in book 80 pages 75 through 76 of Parcel Maps, Records of Riverside County, California.



DOC # 2005-0298053
04/15/2005 08:00A Fee:27.00
Page 1 of 7
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Recording requested by and
when recorded return to:
1111 E. Katella Ave.
Ste 110
Orange, CA 92867
Attn: Ticor Title NLS
550016835

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|   |   |   | 7 |   |   |   |   |   |   |
| A | R | L |   |   |   | COPY | LONG | REFUND | NCHG | EXAM |
|   |   |   |   |   |   |   |   | ?R |

**Washington Mutual**

**EQUITY LINE OF CREDIT DEED OF TRUST**

Loan Number: 0678991803    T

27

THIS DEED OF TRUST is between:
JUAN MEZA

whose address is:
    32859 BATSON LN  Wildomar, CA 92595-9234

("Trustor");    Ticor Title NLS    , a    CALIFORNIA
corporation, the address of which is:
    1111 E. Katella Ave. Ste 110 Orange, CA 92867    ,
and its successors in trust and assigns ("Trustee"); and
Washington Mutual Bank, FA, a federal association, which is organized and existing under the
laws of the United States of America, and whose address is 400 E. Main Street, Stockton, CA
95290 ("Beneficiary") and its successors or assigns.

1.  **Granting Clause.** Trustor hereby grants, bargains, sells and conveys to Trustee in
trust, with power of sale, the real property in    RIVERSIDE    County, California,
described below and all interest in it Trustor ever gets:

PARCEL 2 AND LT: C PARCEL MAP 13249 BK: 80 PG: 75-76, COUNTY OF RIVERSIDE, CA.

ACCOMMODATION ONLY:
THIS INSTRUMENT FILED FOR RECORD
BY TICOR TITLE COMPANY IS AN
ACCOMMODATION ONLY. IT HAS NOT
BEEN EXAMINED AS TO ITS EXECUTION,
OR AS TO ITS EFFECTS UPON TITLE.

Tax Parcel Number:    370-371-005-6    together with all
insurance and condemnation proceeds related to it; all plumbing, lighting, air conditioning and
heating apparatus and equipment; and all fencing, blinds, drapes, floor coverings, built-in
appliances and other fixtures at any time installed on or in or used in connection with such real
property. All of the property described above will be called the "Property." As used herein

4360 (10/21/04) W6.1    **BANK**    Page 1 of 7

Printed on 1/10/2008 8:18:15 AM   Provided by Data Trace System

RIVERSIDE,CA   Document: TD 2005.298053

069891803

"State" shall refer to the state of California.

2.   **Obligation Secured.** This Deed of Trust is given to secure performance of each promise of Trustor contained herein and in a Home Equity Line of Credit Agreement and Disclosure with Beneficiary of even date herewith with a maximum credit limit of   **$100,000.00**   ("Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Trustor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein.   The Credit Agreement provides for variable and fixed rates of interest.   Under the Credit Agreement, the Trustor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Trustor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below.   The Credit Agreement provides that unless sooner repaid, all amounts due under the Credit Agreement are due and payable in full thirty (30) years from the date of this Deed of Trust (the "Maturity Date").   All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt".

3.   **Representations of Trustor.** Trustor represents that:
(a)   Trustor is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and
(b)   The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4.   **Promise of Trustor.** Trustor promises:
(a)   To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;
(b)   To allow representatives of Beneficiary to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
(c)   To pay on time all lawful taxes and assessments on the Property;
(d)   To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
(e)   To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security;
(f)   To keep the improvements on the Property insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Subject to the rights of the holder of any lien described in 3(a), Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy shall be applied to the repair of such improvements, unless doing so would impair Beneficiary's security, in which event such proceeds may be applied upon any indebtedness hereby secured.   In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Trustor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

0678991803

(g) To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Trustor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Trustor's name and to execute all documents necessary to transfer title if there is a default; and

(h) To advise Beneficiary immediately in writing of any change in Trustor's name, address or employment.

5. **Sale, Transfer or Further Encumbrance of Property.** Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Trustor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

6. **Curing of Defaults.** If Trustor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with such covenants without waiving any other right or remedy it may have for Trustor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Trustor shall be secured by this Deed of Trust; at Beneficiaries option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Beneficiary from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Trustor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7. **Remedies For Default.**

(a) Prompt performance under this Deed of Trust is essential. If Trustor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, or if Trustor fails to comply with any other term, condition, obligation or covenant contained in the Credit Agreement or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Trustor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Trustor shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Beneficiary may than or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part, and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Trustor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the proceeds of the sale as follows: (i) to the expenses of the sale, including a reasonable trustee's fee and lawyer's fee; (ii) to the obligations secured by this Deed of Trust; and, (iii) the surplus, if any, shall go to the person(s) legally entitled thereto.

(b) Trustee shall deliver to the purchaser at the sale its deed, without warranty, which

4360 (10/21/04) W6.1                                   **BANK**                                   Page 3 of 7

0678991803

shall convey to the purchaser the interest in the Property which Trustor had or had the power to convey at the time of execution of this Deed of Trust and any interest which Trustor subsequently acquired. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

    (c)  To the extent permitted by law the power of sale conferred by this Deed of Trust is not an exclusive remedy. In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of California.

    (d)  By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

    **8.  Condemnation; Eminent Domain.** In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the Debt, shall, except as required by applicable law, be paid to the Debt.

    **9.  Fees and Costs.** Trustor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

    **10. Reconveyance.** Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby and Beneficiary and Trustee shall be entitled to charge Trustor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or reconveyance of your security instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you have received.

    **11. Trustee; Successor Trustee.** Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law. The successor Trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Trustor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

    **12. Savings Clause.** If a law, which applies to this Deed of Trust or the Credit Agreement and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the interest or other loan charges collected or to be collected in connection with this Deed of Trust or the Credit Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Trustor which exceeded permitted limits will be refunded to Trustor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

4360 (10/21/04) W6.1                                    **BANK**                                    Page 4 of 7

0678991803

**13. Miscellaneous.** This Deed of Trust shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the Credit Agreement secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one person shall be read to refer to more than one person if two or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with federal law and, to the extent federal law doesn't apply, the laws of the state of California. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in full force and effect.

**14. Beneficiary and Similar Statements.** Beneficiary may collect a fee in the maximum amount allowed by law for furnishing any beneficiary statement, payoff demand statement or similar statement.

**15. Riders.** If one or more riders are executed by Grantor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider          ☐ Other: _____
                                        (specify)
☐ Planned Unit Development Rider

4360 (10/21/04) WB.1                    **BANK**                    Page 5 of 7

0678991803

By signing below Trustor accepts and agrees to the provisions of this Deed of Trust and of any rider(s) executed by Trustor concurrently therewith.

DATED at _Lake Elsinore_ , _California_ this _11th_ day of _Abril_ . _2005_ .

TRUSTOR(S):

_Juan P Meza_
JUAN PADILLA MEZA

The undersigned executes this instrument only to subordinate any interest he/she may acquire including without reservation any homestead/dower rights and to acknowledge all the terms and covenants contained in this Security Instrument and any rider(s) thereto and agrees to be bound hereby.

_Maria Meza_
Maria Meza

4360 (10/21/04) W6.1                    **BANK**                    Page 6 of 7

0678991803

STATE OF CALIFORNIA          )
                             ) SS
COUNTY OF Riverside          )

On April 11, 2005 before me, HITESH PATEL _____ a Notary
Public in and for the State of California, personally appeared
JUAN P MEZA and MARIA MEZA

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public in and for the State of California
My Commission expires: 4 | 55603 2

HITESH PATEL
Commission # 1556032
Notary Public - California
Orange County
My Comm. Expires Feb 28, 2009

**REQUEST FOR FULL RECONVEYANCE**
(Do not record. To be used only when note has been paid.)

TO:    TRUSTEE

      The underaigned is the legal owner and holder of the Note and all other indebtedness secured by the within
Deed of Trust. Said Note, together with all other indebtedness secured by this Deed of Trust, has been fully
paid and satisfied and you are hereby requested and directed, on payment to you of any sums owing to you
under the terms of this Deed of Trust to cancel the Note above mentioned and all other evidences of
indebtedness secured by this Deed of Trust together with the Deed of Trust and to convey, without warranty,
to the parties designated by the terms of this Deed of Trust all the estate now held by you thereunder.

      DATED _____     _____

                                        _____

      Mail reconveyance to              _____

4360 (10/21/04) WS.1                    **BANK**                    Page 7 of 7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

**UNITED STATES OF AMERICA,**  Plaintiff,  )  CRIMINAL CASE NO. 07mj2946-WMC

v.  )

JUAN MEZA-PADILLA  Defendant.  )  **ORDER AND CONDITIONS OF PRETRIAL RELEASE: BAIL** (18 U.S.C. § 3142(c))

A hearing was held to determine pretrial conditions of release of the defendant pursuant to 18 U.S.C. § 3142. The Federal Judge determined an unconditional release pursuant to 18 U.S.C.§ 3142(b) is not sufficient to assure the appearance of the defendant and the safety of the community. Thus, conditions of pretrial release are necessary pursuant to 18 U.S.C.§ 3142(c). *Good cause appearing,*

IT IS ORDERED that the defendant shall be released subject to the condition that the defendant: *(a) not commit a federal, state or local crime during the period of release, (b) make all court appearances and (c) comply with the conditions itemized below, as indicated by (✓), in accordance with 18 U.S.C.§ 3142(c)(2):*

## STANDARD CONDITIONS:

✓ 1. restrict travel to ❑ San Diego County, ☒ Southern District of California, ☒ Central District of California, ❑ State of California, ❑ United States, ☒ do not enter Mexico, ❑ other:_____;

✓ 2. report for supervision to Pretrial Services Agency (PSA) as directed by the assigned PSO and pay for the reasonable costs of supervision in an amount determined by PSA and approved by the Court;

✓ 3. not possess or use any narcotic drug or controlled substance, (defined in 21 U.S.C. § 802), without a lawful medical prescription;

✓ 4. not possess any firearm, dangerous weapon or destructive device during the pendency of the case;

✓ 5. read, or have explained, and acknowledge understanding of the Advice of Penalties and Sanctions Form;

✓ 6. provide a current residence address and phone number prior to release and keep it current while case pending.

## ADDITIONAL CONDITIONS:

___ 7. be able to legally remain in the United States during pendency of the proceedings;

___ 8. submit to treatment, and/or testing, as specified by the PSO, for:
❑ drugs or alcohol, and/or ❑ psychiatric or psychological counseling;

✓ 9. participate in a Global Positioning System (GPS) satellite monitoring program ❑ active ❑ passive, including, release of defendant to PSA custody; and ❑ residence restrictions and/or ❑ permissive travel for employment. Defendant and sureties are responsible for GPS equipment loss or damage.
❑ submit to supervision and custody of _____; and/or
❑ remain at a specified residence (curfew) between the hours of _8_ P.M. and _5_ A.M. daily;

✓ 10. actively seek and maintain full-time employment, ~~schooling, or combination of both~~;

✓ 11. execute a personal appearance bond in the amount of $ _100,000_ secured by:
☒ a trust deed to the United States on real estate approved by a Federal Judge;
☒ the co-signatures of _A + real prop sureties_ financially responsible (related) adults;
❑ Nebbia Hearing ☒ Exam of Sureties ❑ other: _____

___ 12. provide the court with: ❑ a cash bond and/or ❑ execute a bail bond by an approved solvent corporate surety in the amount of $ _____ that covers **ALL** conditions of release (not just appearances).

___ 13. 18 U.S.C.§ 3142(d) hold until _____; if no detainer is lodged by then, these conditions take effect.

✓ 14. clear all warrants/FTA's within _45_ days of release.

___ 15. all conditions previously set will remain the same.

___ 16. other conditions: _____

DATED: 1/3/08

cc: Defendant/Counsel & U.S. Pretrial Services

Federal Judge

FILED JAN 3 2008 CLERK CT COURT SOUTHERN OF CALIFORNIA DEPUTY

K:\COMMOM\EVERYONE\CRJM-49B.WPD  Form Crim-49B(Rev. 8/04)